UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA
for the use of PHILLIPS
HEAVY, INC.,

Plaintiff,

v. Case No. 6:26-cv-535-CAB

VETERAN DESIGN &
CONSTRUCTION, INC.
and GREAT AMERICAN
INSURANCE COMPANY,

Defendants.

# ORDER

This cause comes before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings (the "**Motion**") (Doc. 15). Plaintiff responded in opposition. (Doc. 17). Upon due consideration, the Court will grant the Motion.

## I. Background

In this action, Plaintiff United States of America f/t/u/o Phillips Heavy, Inc. ("**Phillips**") has brought claims against Defendants Veteran Design & Construction, Inc. ("**VDCI**") and Great American Insurance Company ("Great American") related to a contractual dispute. (Doc. 1). Specifically, Plaintiff alleges that it subcontracted with VDCI to provide services for a construction project at the Cape Canaveral National Cemetery in Mims, Florida (the "**Project**"). (*Id.* ¶ 9). Plaintiff contends that it timely completed its work for the Project, but that VDCI has failed and refused to

pay Plaintiff the amount owed under the subcontract. (*Id.* ¶¶ 13–23). Plaintiff further contends that Great American, as surety, executed a payment bond to secure VDCI's payment of subcontractors, and that Great American is jointly and severally liable to Plaintiff. (*Id.* ¶¶ 11, 53).

Pursuant to the subcontract executed between Plaintiff and VDCI (the "**Subcontract**") that underlies Plaintiff's causes of action, "[c]laims, disputes, or other matters in controversy arising out of or related to this Subcontract" are to be resolved through "Nonbinding Mediation followed by Binding Arbitration." (Doc. 15 at 12, 20). The Subcontract further provides that claims "not resolved by mediation shall be subject to arbitration which, unless the parties mutually agree otherwise, shall be administered by the American Arbitration Association." (*Id.* at 20). The Subcontract also provides that "[t]he award rendered by the arbitrator or arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof." (*Id.* at 21). Great American is not a party to the arbitration agreement. (*See id.* at 12; *see also* Doc. 17 at 2 ("Great American is not a signatory to the Subcontract containing the arbitration clause")).

Defendants now request that the Court (1) compel arbitration between Plaintiff Phillips and Defendant VDCI pursuant to the Arbitration Agreement, and (2) stay the action pending arbitration, including the cause against Great American. (Doc. 15). Plaintiff opposes the Motion, though Plaintiff appears to concede the validity of the arbitration agreement between itself and VDCI, acknowledging that the Subcontract provides for arbitration and advising that Plaintiff "would not oppose VDCI's Motion

so long as Great American would consent to participate in an arbitration among the parties." (Doc. 17 at 1–2 & n.1). The Motion is ripe for consideration.

**II. Legal Standard**

The Federal Arbitration Act ("**FAA**"), 9 U.S.C. §§ 1-16, governs the validity and enforcement of arbitration agreements. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2; *see Walthour v. Chipio Windshield Repair*, LLC, 745 F.3d 1326, 1329 (11th Cir. 2014). The FAA establishes "a liberal federal policy favoring arbitration [agreements] and the fundamental principle that arbitration is a matter of contract." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263–64 (11th Cir. 2017) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks omitted)); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, *Inc.*, 473 U.S. 614, 625-26 (1985) (requiring courts to "rigorously enforce agreements to arbitrate" (internal quotation omitted)).

Section 4 of the FAA grants district courts the authority to compel arbitration once the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not [a]n issue." 9 U.S.C. § 4. The FAA thus codifies a "strong federal preference for arbitration of disputes . . . ." *Musnick v. King Motor Co. of*

*Fort Lauderdale*, 325 F.3d 1255, 1258 (11th Cir. 2003); *see also Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 (11th Cir. 2016) (per curiam) ("Federal policy strongly favors enforcing arbitration agreements.").

In considering whether to compel arbitration, a court considers the following three factors: (1) "whether a valid written agreement to arbitrate exists;" (2) "whether an arbitrable issue exists;" and (3) "whether the right to arbitrate has been waived." *Exceen v. Ramirez*, No. 8:24-cv-00880-WFJ-AEP, 2024 WL 3327509, at *2 (M.D. Fla. June 13, 2024) (quoting *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008)); *see also Abellard v. Wells Fargo Bank, N.A.*, No. 19-cv-60099, 2019 WL 2106389, at *2 (S.D. Fla. May 14, 2019); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (indicating that the threshold question in determining whether to compel arbitration is "whether the parties agreed to arbitrate the dispute" (citing *Mitsubishi Motors Corp.*, 473 U.S. at 626)). "The court must grant a motion to compel arbitration if it is satisfied that the parties agreed to arbitrate the claims at issue." *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 686 F. Supp. 2d 1318, 1322 (S.D. Fla. 2010), *aff'd*, 433 F. App'x 842 (11th Cir. 2011)[1] (citations omitted).

Once the court is satisfied that an arbitration agreement is enforceable, the FAA provides that a court must stay the portion of the action subject to arbitration, pending the conclusion of the arbitration. *See* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) (per curiam) ("Upon finding that a claim is subject

---

1 "Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 (11th Cir. 2018).

to an arbitration agreement, the court should order that the action be stayed pending arbitration" (citing 9 U.S.C. § 3)); *Caley*, 428 F.3d at 1368 (stating that "the "FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to arbitration" under a written arbitration agreement (citation and internal quotation marks omitted)); *Norfolk S. Ry. Co. v. Fla. E. Coast Ry., LLC*, No. 3:13-cv-576-J-34JRK, 2014 WL 757942, at *11 (M.D. Fla. Feb. 26, 2014) ("The Eleventh Circuit has held that the proper course is to stay the proceedings rather than dismiss the action." (citations omitted)).

The Supreme Court has observed that it is a matter of discretion of the district court whether to stay proceedings with respect to non-arbitrating parties. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21 ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). "[C]ourts generally refuse to stay proceedings of nonarbitrable claims when it is feasible to proceed with the litigation." *Klay*, 389 F.3d at 1204. However, "[c]rucial to this determination is whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* "[A] subcontractor's claim against a surety on a payment bond may be stayed pending arbitration between the primary contractor and the subcontractor." *U.S. ex rel. Postel Erection Grp., L.L.C. v. Travelers Cas. & Ins. Co. of Am.,* No. 6:12-cv-182-Orl-37, 2012 WL 2505674, at *1 (M.D. Fla. June 28, 2012).

**III. Discussion**

Here, the record reflects that Plaintiff and Defendant VDCI entered into a valid and enforceable arbitration agreement that covers Plaintiff's claims against VDCI. (*See* Doc. 15 at 12–35; *see also* Doc. 17 at 7 ("Phillips does not oppose arbitration of its breach of contract claim against VDCI.")). The agreement to arbitrate provides that it covers all "[c]laims, disputes, or other matters in controversy arising out of or related to this Subcontract." (Doc. 15 at 20). Furthermore, the claims that Plaintiff has alleged in its Complaint clearly arose out of the Subcontract. (*See* Doc. 1 ¶¶ 41–59). Accordingly, the undersigned concludes that a valid arbitration agreement exists between Plaintiff and VDCI and that the scope of the arbitration agreement encompasses their dispute. The Court will thus require that Plaintiff and VDCI submit their claim(s) to binding arbitration in accordance with the arbitration agreement. The litigation here between Plaintiff and VDCI should be stayed while the arbitration proceeds, as the arbitration is likely to resolve the dispute between them.

The more difficult question is whether the Court should stay the instant proceedings with respect to Plaintiff's Miller Act claim against the surety, Great American, who is not a party to the arbitration agreement. Defendants argue, citing numerous cases, that "there is a long history of Miller Act cases which resolve the tension between the Miller Act and the Federal Arbitration Act by staying the Miller Act claim pending arbitration of the underlying dispute." (Doc. 15 at 7) (internal citation and quotation omitted). Defendants also cite a large number of cases granting or upholding stays of Miller Act claims against sureties pending arbitration of

subcontractors' claims against contractors. (*Id.*). Defendants argue that "[t]he claims and defenses raised in this action will be comingled with the facts, circumstances, claims and defenses being litigated in the arbitration proceeding," and that Great American's liability "turns on VDCI's defenses and impending counterclaim and Phillips' alleged rights under the Subcontract." (*Id.* at 9). Plaintiff does not provide any insight or argument regarding the specific nature of those defenses or counterclaim. (*See id.*).

Plaintiff counters that "a stay remains discretionary and must be weighed against the Miller Act's remedial purpose," namely to provide a prompt payment remedy to those who work on federal construction projects. (Doc. 17 at 4). In support of its argument, Plaintiff cites rulings in *United States v. Sauer Inc.,* No. 3:16-cv-1525-J-25PDB*,* 2018 WL 11482801 (M.D. Fla. Dec. 7, 2018), and *United States for Use & Benefit of TSI Tri-State Painting, LLC v. Federal Insursance Co.*, No. CV 216-113, 2016 WL 7385715, at *5 (S.D. Ga. Dec. 20, 2016). Neither of those cases, however, involved situations analogous to this one with a parallel, binding arbitration. Rather, in both cases, defendants sought to stay proceedings pending other forms of dispute resolution. *See Sauer Inc.,* 2018 WL 11482801, at *1 ("[T]he parties resolved a portion of their claims and [the contractor] agreed to submit [the subcontractor's] remaining claims to the Government as provided in the Contract Disputes Act . . . Defendants request that the Court stay entry of a Case Management Order until the Court rules on the instant Motion and that the Court stay the case until the CDA claim is resolved."); *Fed. Ins. Co.*, 2016 WL 7385715, at *5 ("[I]t is undisputed that Sauer has not requested that TSI

engage in arbitration with it. Therefore, the only question before the Court is whether it should stay this case while Sauer negotiates its contract with the Government."). They are thus of limited assistance to the Court.

More pertinently, Plaintiff argues that its claims against VDCI and Great American are not "inherently inseparable," and that allowing its claim against Great American to proceed here while its claim against VDCI proceeds in arbitration "will not result in duplicative proceedings." (Doc. 17 at 7). Based on the record before the Court, however, the claims appear to be intertwined. In Count One, Plaintiff's breach of contract claim against VDCI, Plaintiff alleges that it "performed all of its contractual obligations under the Subcontract," that "VDCI failed to perform its contractual obligations under the Subcontract to timely pay Phillips its earned Subcontract balance," and that Phillips has thus "suffered damages in an amount to be proven . . . but not less than $1,622,384.64." (Doc. 1 ¶¶ 42–45). In Count Two, Plaintiff's Miller Act claim against Great American, Plaintiff repeats these same allegations, and then alleges that "Great American, as surety, is obligated under the Bond to pay Phillips for the Subcontract work performed by it [ ] for which VDCI has failed and refused to make payment." (*Id.* ¶¶ 46–59). Indeed, Plaintiff incorporates by reference and realleges in Count Two all of the allegations in Count One and in the factual section supporting Count One. (*Id.* ¶ 46).

In short, not only are the factual issues for the two claims expressly intertwined, but "it appears likely that resolution of the arbitration claim may be necessary to establish the amount [due to] Plaintiff." *Travelers Cas. & Ins. Co. of Am.*, 2012 WL

2505674, at *2; *see also United States v. Travelers Cas. & Sur. Co.*, No. 3:21-cv-614-MMH-LLL, 2021 WL 10382213, at *10 (M.D. Fla. Dec. 17, 2021) ("[C]onsidering that the Miller Act claim relies on the same underlying factual allegations as the dispute being ordered to arbitration, the Court, in its discretion, will stay this proceeding pending the resolution of arbitration."). The Court thus finds a stay of both claims to be appropriate.

It is therefore **ORDERED** that:

1. Defendants' Motion to Compel Arbitration and Stay Proceedings (Doc. 15) is **GRANTED**.
2. Phillips and VDCI are **DIRECTED** to arbitrate their dispute in this action in accordance with the arbitration agreement between them (Doc. 15 at 12–35, Article 6).
3. The case is **STAYED** pending the completion of the arbitration proceeding between Phillips and VDCI.
4. The Clerk of Court is **DIRECTED** to terminate any pending motions and keep the case administratively closed until further Order.
5. The parties are **DIRECTED** to file a joint status report upon the conclusion of the arbitration proceedings. If the arbitration is not completed by **January 18, 2027**, then the parties shall file a joint status

report at that time and every 120 days thereafter until the arbitration proceedings are completed.

**DONE** and **ORDERED** in Orlando, Florida on September 18, 2026.

Chauncey A. Bratt
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Any Unrepresented Parties